# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANDREW SKELTON,<br>　　　　Plaintiff,<br><br>　　　　v.<br><br>BOROUGH OF EAST GREENVILLE and<br>KEITH GERHART, Individually and in his<br>capacity as Mayor of East Greenville<br>Borough,<br>　　　　Defendants. | CIVIL ACTION<br><br><br><br>NO. 20-4500 |

**DuBOIS, J.**　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　**June 30, 2021**

## M E M O R A N D U M

### I.　　INTRODUCTION

Plaintiff Andrew Skelton commenced this action against his former employer, defendant Borough of East Greenville (the "Borough"), and the Borough's Mayor, defendant Keith Gerhart, alleging discrimination and retaliation based on his age, disability, and free speech, culminating in his termination. Those allegations stem from, *inter alia*, defendants' alleged retaliation after plaintiff expressed support for the Borough's police department and opposition to Gerhart's political faction.

Presently before the Court is defendants' Motion to Dismiss Plaintiff's Amended Complaint. For the reasons set forth below, the Motion is granted in part and denied in part.

### II.　　BACKGROUND

The facts as alleged in the Amended Complaint, accepted as true for purposes of this Motion, are summarized as follows:

#### A.　Formation of BEGPD

Plaintiff served as Chief of Police for the Borough until his termination on May 13, 2019. Before that, he was a Military Police Officer in the United States Army and a Pennsylvania State

Trooper. Am. Compl. ¶¶ 15–17. At the time the Amended Complaint was filed, plaintiff was fifty-two years old. *Id.* ¶ 15. The Borough is a Pennsylvania municipality which receives "funding from the U.S. Department of Housing and Urban Development ("HUD") to develop housing and/or reconstruction projects for lower-income households or lower-income neighborhood or to eliminate slums or blight." *Id.* ¶ 14.

In March 2017, plaintiff learned that the Borough "intended to sever its existing relationship with Pennsburg Borough to disband the Upper Perk [sic] Police District ("UPPD"), a shared, regional police department." *Id.* ¶ 18. In May 2017, the Borough retained plaintiff as a consultant in connection with the formation of the Borough's own police department. *Id.* ¶¶ 19, 20. In July 2017, the Borough promoted plaintiff to Chief of Police for the newly established Borough of East Greenville Police Department ("BEGPD"). *Id.* ¶ 21.

### B. "We the People" Faction

In 2017, a political faction led by Gerhart—the "We the People" faction—began to form. *Id.* ¶ 24. "Candidates in the 'We the People' faction, including Defendant Gerhart, ran on the public platform of eliminating the [BEGPD]." *Id.* ¶ 26. Prior to his election as Mayor of the Borough, "Gerhart expressed his disdain for [plaintiff] . . . through a Facebook post." *Id.* ¶ 27. "Gerhart's animus towards [plaintiff] was based on . . . [plaintiff's] expressing support for the BEGPD and opposition to the 'We the People' faction." *Id.* ¶ 28. In November 2017, Gerhart was elected Mayor of the Borough. *Id.* ¶ 29.

### C. Retaliation Against Plaintiff

After being elected Mayor, Gerhart allegedly retaliated against plaintiff based on his age, his views on the BEGPD and "We the People" faction, and his medical conditions—anxiety and hypertension.

In December 2017, Gerhart and other members of the "We the People" faction attempted to terminate plaintiff based on his age. *Id*. ¶ 33. However, "due to public outcry," they were unable to terminate plaintiff at that time. *Id*.

In June 2018, the BEGPD held meetings regarding a project, "Project X," to "implement bullet resistant steel to the interior walls of the police department." *Id*. ¶¶ 41, 44. The project was developed by plaintiff to protect the BEGPD's employees from being "shot at by snipers." *Id*. ¶ 41. "From the outset of this initiative, Defendant Gerhart expressed animosity towards [Project X] and made several attempts to stunt its funding." *Id*. ¶ 43. On September 4, 2018, Gerhart disclosed "the factual nature of Project X and notified the public that the police department did not currently have steel walls in place, thereby placing BEGPD employees' safety in jeopardy." *Id*. ¶ 45.

On September 10, 2018, plaintiff's physician diagnosed him with anxiety and hypertension and recommended that he "undertake a brief medical leave of absence . . . ." *Id*. ¶¶ 54, 55. As a result, plaintiff contacted Gerhart and James Fry, the Borough Manager, "request[ing] the said medical leave of absence." *Id*. ¶ 55. In response, "Fry hand delivered a counseling memo to [plaintiff] denying his request . . . and threatening administrative action." *Id*. ¶ 56. That memo "was issued at Defendant Gerhart's directive." *Id*. ¶ 57.

On October 19, 2018, Gerhart "issued [plaintiff] a letter accusing him of 'insubordination.'" *Id*. ¶ 70. In response, plaintiff filed a formal complaint of retaliation with the Borough. *Id*. ¶ 71. On May 13, 2019, the Borough terminated plaintiff, "allegedly for [his] impropriety." *Id*. ¶ 75.

### D. The Present Action

Plaintiff filed the Amended Complaint on November 17, 2020, asserting the following claims: First Amendment retaliation under 42 U.S.C. § 1983 (Counts 1 and 2); Age Discrimination in Employment Act ("ADEA") (Count 3); discrimination and retaliation based on age and disability under Pennsylvania Human Relations Act ("PHRA") (Counts 4, 5, 8, 9, and

10); Americans with Disabilities Act ("ADA") (Counts 6 and 7); discrimination and retaliation based on disability under Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act") (Counts 11 and 12); Pennsylvania Whistleblower Law ("PWL") (Count 13); and breach of contract (Count 14).

On December 15, 2020, defendants filed a Motion to Dismiss Plaintiff's Amended Complaint. Plaintiff filed a response on December 29, 2020, and defendants filed a reply on January 13, 2021. The Motion is thus ripe for decision.

### III.  LEGAL STANDARD

The purpose of a 12(b)(6) motion to dismiss is to test the legal sufficiency of the complaint. *Liou v. Le Reve Rittenhouse Spa, LLC*, No. 18-5279, 2019 WL 1405846, at *2 (E.D. Pa. Mar. 28, 2019) (DuBois, J.). To survive a motion to dismiss, a plaintiff must allege "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In assessing the plausibility of a plaintiff's claims, a district court first identifies those allegations that constitute nothing more than mere "legal conclusions" or "naked assertion[s]." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, 564 (2007). Such allegations are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. The court then assesses "the 'nub' of the plaintiff['s] complaint—the well-pleaded, nonconclusory factual allegation[s]"—to determine whether it states a plausible claim for relief. *Id.* at 680.

### IV.  DISCUSSION

Although defendants do not identify their Motion as a partial motion to dismiss, the Court notes that the Motion does not address every claim in the Amended Complaint—it does not address plaintiff's claims based on the ADEA (Count 3), ADA (Counts 6 and 7), or breach of

contract (Count 14).  Accordingly, the Court will consider the Motion as a partial motion to dismiss.

In the Motion, defendants argue that (1) plaintiff's Rehabilitation Act claims fail because he has not alleged that the BEGPD receives federal financial assistance; (2) Gerhart is entitled to qualified immunity with respect to plaintiff's PHRA, PWL, and § 1983 claims; (3) plaintiff's § 1983 claim against the Borough fails because he has not alleged that a municipal custom or policy caused a constitutional violation; and (4) the Borough is "provided immunity from state law tort claims" under the Pennsylvania Political Subdivision Tort Claims Act (the "Tort Claims Act"), 42 Pa. C.S. § 8541, *et. seq*.  The Court considers each argument in turn.

### A.  Rehabilitation Act Claims

The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ."  29 U.S.C. § 794(a).  To state a claim under the Act, a plaintiff must allege that the "program or activity" in question receives federal financial assistance.  *Id*.

As discussed *supra*, defendants argue that plaintiff's Rehabilitation Act claims fail because he has not alleged that the "program or activity" at issue in this case—the BEGPD— receives federal financial assistance.  Plaintiff responds that the Borough received federal funds from HUD, and its "receipt of federal funding prohibits discrimination on an **institution-wide** basis."  Pl.'s Resp. at 13 (emphasis in original).  The Court agrees with defendants on this issue.

Under the Rehabilitation Act, the phrase "program or activity" refers "only to those agencies or departments receiving federal funds."  *Disability Rights N.J., Inc. v. Velez*, 862 F. Supp. 2d 366, 374 (D.N.J. 2012) (citing 29 U.S.C. § 794(a)).  An entire state or borough cannot be a "program or activity" under the Act.  *Taibi v. Borough of Slatington*, No. 18-385, 2018 WL

6173366, at *5 (E.D. Pa. Nov. 26, 2018) (rejecting police officer's argument that "he need only allege that the Borough as a whole receives federal funds" to state a Rehabilitation Act claim).

The Amended Complaint does not include any allegations that the BEGPD receives federal financial assistance. Plaintiff's allegation that the Borough as a whole receives funding from HUD is insufficient to support a Rehabilitation Act claim based on discrimination and retaliation against a BEGPD employee. Accordingly, the Motion is granted to the extent it seeks dismissal of plaintiff's claims under the Rehabilitation Act. This dismissal is with prejudice because amendment would be futile—any Rehabilitation Act claims would be duplicative of plaintiff's PHRA claims.[1]

### B. Qualified Immunity

As discussed *supra*, defendants argue that Gerhart is entitled to qualified immunity with respect to plaintiff's PHRA, PWL, and § 1983 claims.

As a preliminary matter, the Court concludes that Gerhart is not entitled to qualified immunity as to plaintiff's PHRA and PWL claims. It is well settled that qualified immunity is not available to shield officers from PHRA or PWL claims when sued in their individual capacities. *See, e.g., Wardlaw v. City of Phila.*, No. 09-3981, 2011 WL 1044936, at *10 (E.D. Pa. Mar. 21, 2011) (qualified immunity not available as to PHRA claim); *Keefer v. Durkos*, 371 F. Supp. 2d 686, 700 (W.D. Pa. 2005) (qualified immunity not available as to PWL claim).

With respect to plaintiff's claims under 42 U.S.C. § 1983, the qualified immunity analysis involves two steps: "(1) whether the plaintiff alleged sufficient facts to establish the violation of a

---

[1] Defendants argue that, if the Court concludes that plaintiff's allegations are "beyond the scope of the Rehabilitation Act," then it "lacks subject matter jurisdiction to make any further determinations in this matter." Mot. at 4 n.2. The Court rejects this argument. Notwithstanding the dismissal of plaintiff's Rehabilitation Act claims, this action includes claims based on 42 U.S.C. § 1983, the ADA, and ADEA, which provide subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

constitutional right, and (2) whether the right was 'clearly established' at the time of the defendant's actions." *Estate of Lagano v. Bergen Cty. Prosecutor's Office*, 769 F.3d 850, 858 (3d Cir. 2014).

1. Violation of Constitutional Right

The Court first considers whether plaintiff has "alleged sufficient facts to establish the violation of a constitutional right." *Id*. Plaintiff alleges that Gerhart violated the First Amendment by retaliating against him for "expressing his support for the BEGPD and opposition to [Gerhart's] faction." Am. Compl. ¶ 28.

To state a First Amendment retaliation claim, a plaintiff must allege "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Mirabella v. Villard*, 853 F.3d 641, 649 (3d Cir. 2017).

It is undisputed that plaintiff's alleged support for the BEGPD and opposition to Gerhart's political faction constitutes "constitutionally protected conduct." *Id*. With respect to the second element of a First Amendment retaliation claim, plaintiff alleges numerous retaliatory acts by Gerhart—his attempt to terminate plaintiff in December 2017; his "several attempts to stunt [the] funding" of Project X; his disclosure of Project X in September 2018, placing BEGPD employees in danger; his denial of plaintiff's request for medical leave in September 2018; and his letter accusing plaintiff of "insubordination" in October 2018. These allegations are "sufficient to deter a person of ordinary firmness from exercising his constitutional rights." *Id*.

Accordingly, the Court considers whether plaintiff has adequately alleged the remaining element of a First Amendment retaliation claim: "a causal link between the constitutionally protected conduct and the retaliatory action." *Id*.

To allege the requisite causal link, the plaintiff must allege either "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action,

7

or (2) a pattern of antagonism coupled with timing to establish a causal link." *Lauren W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).

The Amended Complaint includes sufficient allegations of "a pattern of antagonism coupled with timing to establish a causal link." *Id*. As discussed *supra*, plaintiff has alleged numerous retaliatory acts by Gerhart. Furthermore, plaintiff alleges: (1) Gerhart led the "We the People" faction; (2) plaintiff expressed opposition to that faction before Gerhart was elected Mayor of the Borough in November 2017; and (3) Gerhart retaliated against plaintiff a number of times, including in December 2017, soon after being elected Mayor.

For the foregoing reasons, plaintiff has adequately alleged that Gerhart violated plaintiff's constitutional rights.

### 2. Clearly Established Right

The Court next considers whether the constitutional right at issue—the First Amendment right to free speech—was clearly established at the time of Gerhart's alleged misconduct.

"To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012). "The right to be free from retaliation for [the] exercise of First Amendment rights is clearly established." *Kantamanto v. King*, 651 F. Supp. 2d 313, 329 (E.D. Pa. 2009).

Plaintiff had a clearly established right under the First Amendment to express his support for the BEGPD and his opposition to the "We the People" faction. A reasonable public official in Gerhart's position would know he could not retaliate against plaintiff for expressing these views.

### 3. Conclusion

For the foregoing reasons, the Motion is denied to the extent it seeks dismissal based on qualified immunity with respect to plaintiff's PHRA, PWL, and § 1983 claims against Gerhart.

### C. *Monell* Claim

The Court next considers defendants' argument that plaintiff's § 1983 claim against the Borough fails because he has not alleged that a municipal custom or policy caused a constitutional violation.

Under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), a § 1983 claim against a municipal entity requires "(1) a constitutional violation by a municipal actor that (2) was caused by a municipal policy or custom." *Boyle v. City of Phila.*, No. 17-262, 2020 WL 4459131, at *9 (E.D. Pa. Aug. 4, 2020) (DuBois, J.) (citing *Monell*, 436 U.S. at 694).

As discussed *supra*, plaintiff has adequately alleged a constitutional violation by Gerhart—a violation of the First Amendment right to free speech. Accordingly, the Court considers whether that violation "was caused by a municipal policy or custom." *Id*.

Policy is made when a policymaker issues an "official proclamation, policy, or edict." *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986)). In contrast, a custom requires a policymaker's "knowledge of, and acquiescence to" a course of conduct that is "so well-settled and permanent as virtually to constitute law." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990).

"The question of who is a 'policymaker' is a question of state law [to] determine which official has final, unreviewable discretion to make a decision or take an action." *Andrews*, 895 F.2d at 1481. With respect to supervision of a municipality's police department, courts in this district have routinely held that the municipality's mayor is a policymaker. *See, e.g., Curran v. City of Phila.*, No. 20-3298, 2020 WL 6700838, at *5 (E.D. Pa. Nov. 12, 2020) (DuBois, J.).

As stated *supra*, plaintiff alleges that Gerhart was the Borough's Mayor. This is a sufficient allegation of Gerhart's status as a policymaker with respect to the Borough's police department.

Plaintiff also sufficiently alleges that Gerhart "acquiesce[d] in a well-settled custom" of retaliation, which caused plaintiff's injuries. *Bielevicz*, 915 F.2d at 850. Plaintiff claims that Gerhart committed numerous retaliatory acts against him.

For the foregoing reasons, the Court concludes that plaintiff has properly alleged a *Monell* claim under § 1983 against the Borough. Accordingly, the Motion is denied to the extent it seeks dismissal of that claim.

### D. State Tort Law Immunity

Lastly, defendants argue that the Borough is "provided immunity from state law tort claims" under the Tort Claims Act, 42 Pa. C.S. § 8541, *et. seq*. Mot. at 12.

The Tort Claims Act provides that "no local agency shall be liable for any damages on account of any injury . . . caused by any act of the local agency or an employee thereof or any other person." "It is well-established that immunity under the [Act] applies only to state law tort claims . . . ." *Mariano v. Borough of Dickson City*, No. 13-97, 2013 WL 6234622, at *7 (M.D. Pa. Dec. 2, 2013).

Defendants' argument on this issue is inapposite. Plaintiff does not allege any state law tort claims. Accordingly, the Motion is denied to the extent it seeks dismissal of any claims in the Amended Complaint based on the Tort Claims Act.

### V. CONCLUSION

For the foregoing reasons, defendants' Motion to Dismiss Plaintiff's Amended Complaint is granted in part and denied in part. The Motion is granted to the extent it seeks dismissal with prejudice of plaintiff's claims under the Rehabilitation Act of 1973. The Motion is denied in all other respects. An appropriate order follows.